UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| Carolyn Bell, Personally and as the Representative of the Estate of Cleman Sweptson, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>District of Columbia, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil No. 14-cv-00299 (APM)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

### I.   INTRODUCTION

This case arises from the death of Cleman Richard Sweptson, Jr., who was allegedly shot and killed without provocation by an unnamed and yet to be identified District of Columbia Metropolitan Police Department ("MPD") Officer, "John Doe." As the mother and personal representative of Mr. Sweptson's estate, Plaintiff Carolyn Bell filed suit alleging various causes of action under District of Columbia law and 42 U.S.C. § 1983 against the District of Columbia ("the District") and the unnamed officer.[1] Before the court is the District's motion seeking to dismiss Count II of Plaintiff's Amended Complaint, which alleges that the District is liable under 42 U.S.C. § 1983 for a violation of Mr. Sweptson's Fourth Amendment rights.[2] After careful consideration

---

[1] Plaintiff has not yet filed proof of service of Officer John Doe. Therefore, the District is the only named defendant to have appeared in this matter.

[2] Plaintiff asserted five counts in her complaint, but only Count II is presently before the court. In her opposition papers, Plaintiff conceded that she has not alleged Count I (Excessive Force – Deprivation of Civil Rights – 42 U.S.C. § 1983) and Count III (Assault and Battery) against the District. *See* Amended Complaint, ECF #6 [hereinafter *Am. Compl.*]; Plaintiff's Opposition Brief, ECF #12 [hereinafter *Opp. Br.*] at 3, 6. Therefore, the District's motion to dismiss Count I and its motion for summary judgment as to Count III are moot. The District has not moved to dismiss Count IV (Wrongful Death). *See* Motion to Dismiss, ECF #7. Finally, Count V is not a separate claim, but merely

of the arguments by both parties and the applicable legal standards, the court grants the District's Motion to Dismiss Count II because the complaint fails to allege sufficient factual content to meet the pleading requirements set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).[3]

## II. BACKGROUND

### A. Facts Alleged in the Complaint

Plaintiff's Amended Complaint alleges the following facts. On April 9, 2013, Mr. Sweptson was visiting his mother, who lives on Bowen Road in Washington, D.C. Am. Compl. ¶ 5. At approximately 2:30 am, Mr. Sweptson was sitting on the front porch of his mother's apartment building when Officer John Doe approached in a marked SUV patrol vehicle. *Id.* Upon being ordered by the officer to leave the front of the building, Mr. Sweptson complied, riding his bicycle down Bowen Road toward Sheridan Road. *Id.* ¶ 6. Officer Doe pursued Mr. Sweptson in his SUV, eventually passing him. *Id.* ¶ 7. When Mr. Sweptson made a left onto the 2500 block of Sheridan Road, Officer Doe was "lying in wait," in his vehicle. *Id.* Officer Doe then confronted Mr. Sweptson. *Id.* "During the course of this encounter," Doe "brandished his weapon and began firing at the unarmed and non-threatening Cleman Sweptson Jr." *Id.* ¶ 8. Shot in the head, chest, and abdomen, Mr. Sweptson died from his wounds. *Id.* ¶ 9. Up until the time he was shot, Mr. Sweptson "had not committed a crime nor had he done anything to suggest that he was a danger to defendant John Doe, himself or any other person." *Id.* ¶ 8. According to Plaintiff, Mr. Sweptson was "shot and killed in an area of Washington D.C. where there is an

---

cites D.C. Code § 12-101 (2001), which grants Plaintiff standing to bring claims on behalf of her deceased son that "accrued for any cause prior to his death." *Id.*

[3] Although Plaintiff relies on the more lenient pleading standard articulated in *Conley v. Gibson*, 355 U.S. 41 (1957), holding that a complaint should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *see* Opp. Br. at 3-4, this holding has been abrogated by more recent Supreme Court decisions. *See, e.g., Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662.

increasing number of complaints from residents against M.P.D. claiming racial profiling, harassment and continuous violations of the constitutional rights of African Americans." *Id.* ¶ 11.

In Count II of her Amended Complaint, Plaintiff alleges that the District acted with deliberate indifference to citizens' safety and caused Mr. Sweptson's death, by failing to properly train, supervise, and control its officers. *Id.* ¶¶ 18-20. She asserts that, at all relevant times, "the rogue officer responsible for the murder of Cleman Sweptson Jr. was acting under the direction and control, and pursuant to the rules, regulations, policies, procedures, and customs of defendant District of Columbia and implemented by its Chief of Police." *Id.* ¶ 18.

**B. Procedural History**

Plaintiff initially filed this action on January 27, 2014, in the Superior Court for the District of Columbia. *See* Notice of Removal, ECF #1. On February 25, 2014, while still before the Superior Court, Plaintiff filed an Amended Complaint. *See* Notice of Filing, ECF #6. On the same day, the District removed the case to this court. *See id.*

On March 4, 2014, the District filed a motion seeking, *inter alia*, to dismiss Count II of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Motion to Dismiss, ECF #7. The District argued that Count II should be dismissed because of Plaintiff's failure to state a claim under the pleading requirements articulated in *Iqbal*, 556 U.S. 662. *See id.* at 11-12.

**III. LEGAL STANDARD**

The Supreme Court's decisions in *Twombly* and *Iqbal* direct federal trial courts to focus on the factual content of a complaint when deciding whether a claim is sufficiently stated to withstand a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6). A complaint must contain "sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its

face." *Iqbal*, 556 U.S. at 678 (emphasis added) (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted). A claim is facially plausible when "the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (emphasis added) (citing *Twombly*, 550 U.S. at 556). A complaint that pleads factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Although the factual allegations need not be "detailed," the Federal Rules demand more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

The court must accept as true Plaintiff's factual allegations and "construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citations omitted) (internal quotation marks omitted); *accord Singh v. District of Columbia*, 881 F. Supp. 2d 76, 81 (D.D.C. 2012). It "need not," however, "accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga*, 677 F.3d at 476 (citations omitted).

## IV. ANALYSIS

### A. Municipal Liability Under 42 U.S.C. §1983

Title 42 U.S.C. §1983 provides a private cause of action against any "person," who, under color of state or District of Columbia law, deprives another individual of a federal constitutional or statutory right. 42 U.S.C.A. § 1983 (1996). Municipalities, like the District, are considered

4


"persons" for purposes of § 1983. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Municipalities, however, are not subject to liability under § 1983 for the actions of their employees under traditional principles of *respondeat superior* liability. *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Monell*, 436 U.S. at 694). Rather, they are only responsible for their employees' constitutional violations if those employees acted "pursuant to municipal policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694).

To establish municipal liability under § 1983, a plaintiff must first demonstrate that there was an underlying constitutional violation, and second, show that the municipality's policy or custom caused the constitutional violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citations omitted). Here, as to the first prong, Plaintiff has alleged that Officer John Doe's act of shooting and killing Mr. Sweptson—who had not committed a crime, nor presented a threat, and voluntarily left when so ordered—constitutes an excessive use of force in violation of the Fourth Amendment. *See generally* Am. Compl. Given established precedent that "[a] police officer may not seize an unarmed, nondangerous suspect by shooting him dead," *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), Plaintiff has stated a predicate violation of Mr. Sweptson's Fourth Amendment rights. *See also Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) (ruling that a plaintiff who alleged that an officer shot him in broad daylight on a city street moments after being ordered to "freeze" pled an excessive use of force).[4]

There are several ways in which a plaintiff can show that the municipality's policy or custom caused the constitutional violation. A plaintiff can demonstrate that: (1) the municipality

---

[4] *Atchinson* also held that a § 1983 plaintiff can satisfy the Federal Rules of Civil Procedure pleading requirements by alleging, in a conclusory fashion, "both a failure to train and an unusually serious instance of misconduct." 73 F.3d at 422-24. *Atchinson* pre-dated *Twombly* and *Iqbal*, and this court must evaluate Plaintiff's complaint under those subsequent Supreme Court decisions, which have declared such conclusory pleading insufficient. *See Robertson v. District of Columbia*, Civil No. 09-1188 (RMU), 2010 WL 3238996, at *7 (D.D.C. August 16, 2010).

"explicitly adopted the policy that was 'the moving force of the constitutional violation,'" *Warren*, 353 F.3d at 39 (quoting *Monell*, 436 U.S. at 694) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-130 (1988)); (2) a policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom," *id.* (citing *Praprotnik*, 485 U.S. at 130); or (3) the municipality neglected to respond "to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations," *id.* (quoting *Baker*, 326 F.3d at 1306) (internal quotation marks omitted). Plaintiff asserts the third basis for municipal liability—that the District caused Mr. Sweptson's death through acts and omissions amounting to "deliberate indifference." *See* Am. Compl. ¶ 19; Opp. Br. at 4.

To determine whether a municipality is liable under a theory of "deliberate indifference," courts look to whether the municipality "knew or should have known of the risk of constitutional violations, but did not act." *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011) (quoting *Baker*, 326 F.3d at 1306) (internal quotation marks omitted); *Warren*, 353 F.3d at 39 ("[F]aced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.").[5] One approach to proving deliberate indifference is by demonstrating a municipality's failure to adequately train its employees. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citations omitted). "The city's 'policy of inaction' in light of notice that its program will cause constitutional

---

[5] In *Warren*, the D.C. Circuit held that municipal liability was sufficiently pled even where the "allegation of actual or constructive knowledge on the part of the District was conclusory." 353 F.3d at 39. Like *Atchinson*, *Warren* preceded *Twombly* and *Iqbal*, and this court must follow those Supreme Court decisions. *See Smith v. District of Columbia*, 674 F. Supp. 2d 209, 213, n.2 (D.D.C. 2009).

violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* (citations omitted). Importantly, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Id.* (citations omitted) (internal quotation marks omitted). The standard for liability for a failure-to-train claim is a stringent one: "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 1359 (citations omitted).

### B. The District's Alleged Liability

According to Plaintiff, her complaint sufficiently states grounds for municipal liability based on "the District's failure to train, supervise and discipline its 7th District Officers, and because the referenced failures amount to deliberate indifference by putting citizens, and particularly African American citizens, at risk of constitutional harm." Opp. Br. at 4. A liberal reading of Plaintiff's complaint points to only two possible paragraphs—paragraphs 11 and 19—that contain arguably *factual* allegations that could support a plausible inference of deliberate indifference.[6] Neither of those paragraphs, however, supplies the necessary "factual content" to meet the pleading requirements of *Twombly* and *Iqbal*.

Paragraph 19 is a conclusory statement that merely parrots the elements of a deliberate indifference claim based on a failure-to-train theory. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555). Paragraph 19 alleges that, "[t]he District of Columbia acted negligently, carelessly, recklessly and with deliberate indifference to the safety of

---

[6] Plaintiff, in her opposition brief, does not specifically identify the alleged facts in her complaint that might give rise to an inference of deliberate indifference. Rather, her brief simply reproduces verbatim paragraphs 5 – 20 of her amended complaint in a single, bolded block quote and, thereafter, concludes that "[t]here can be little question that the plaintiff has set forth 'a short and plain statement' of her claim showing that she is entitled to relief, as required by F.R.C.P. 8(a)." Opp. Br. at 5.

the citizens of the District by failing to properly train, supervise, control, direct, monitor and discipline its officers in their duties and responsibilities." Am. Compl. ¶ 19.  Paragraph 19 is similar to the conclusory allegation rejected by the court in *Costello v. District of Columbia*, 826 F. Supp. 2d 221 (D.D.C. 2011), in which the plaintiffs alleged that MPD officers conducted an unlawful search of their apartment:

> [P]ursuant to the District's long standing policy, practice and custom that allows police officers to execute search warrants without training its officers how to properly execute a search warrant to insure that it is not executed in violation of the requirements of 18 U.S.C. § 3109, and the Fourth Amendment of the United States Constitution's prohibition against unreasonable searches and seizures. It is the execution of this long standing policy, practice, and/or custom that caused the Plaintiff's injuries alleged in this complaint.

*Id.* at 224-25 (citations omitted) (brackets omitted).  The *Costello* court granted the District's motion to dismiss, concluding that the plaintiffs "have pleaded no *facts* indicating that the District's decisionmakers knew or should have known of any deficiencies in the training of its police officers" such as a "pattern of similar constitutional violations by untrained employees." *Id.* at 225-26 (quoting *Connick*, 131 S. Ct. at 1360) (internal quotation marks omitted). Paragraph 19 similarly fails to identify a pattern of violations that should have put District officials on notice that its training program would cause a violation of constitutional rights.  *See Connick*, 131 S. Ct. at 1360 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *Konah v. District of Columbia*, 815 F. Supp. 2d 61 (D.D.C. 2011) ("The Second Amended Complaint does not articulate any specific factual allegations describing any putative inadequacies in the training of correctional officers.").

Nor does Plaintiff allege any "specific form of misconduct" by MPD officers that was condoned by the District and that caused Mr. Sweptson's death. *Robinson v. District of Columbia*, 736 F. Supp. 2d 254, 265 (D.D.C. 2010). In *Robinson*, the plaintiff alleged that:

> [I]t was the policy, practice and custom of the District, endemic to its MPD, to encourage and permit officers on patrol in their vehicles to intimidate young motorcyclists, intentionally, using means including but not limited to swerving into motorcyclists' lane of traffic causing the rider to swerve, fall or lose control of the motorcycle.

*Id.* at 264 (citations omitted) (internal quotation marks omitted) (brackets omitted). Because she had alleged that her son's death was caused by the "specific form of misconduct" that had previously been reported and that the District had refused to address, the court found that the plaintiff had demonstrated "a plausible causal connection between the District's alleged failure to train, supervise, or discipline officers regarding the alleged misconduct and the constitutional deprivation" suffered by the decedent. *Id.* at 265 (citations omitted). By contrast, Plaintiff's complaint fails to identify any "specific form of misconduct" about which District officials were on notice and failed to address and correct. The complete absence of any factual allegations concerning a specific shortcoming in training forecloses any plausible inference of "actual or constructive knowledge" by District policymakers that its officers will "probably violate constitutional rights." *Warren*, 353 F.3d at 39 (citations omitted).[7]

Paragraph 11 takes a slightly different approach to pleading municipal liability. Instead of alleging a deficiency in training, paragraph 11 implies that the District is liable for Mr. Sweptson's death because it ignored repeated complaints of harassment and unconstitutional police behavior

---

[7] In *Connick*, the Supreme Court discussed the "narrow range of circumstances" in which a plaintiff might be able to prove deliberate indifference based on a "single incident"—as distinct from a "pattern of violations"—that was the "obvious" consequence of a failure to train. *Connick*, 131 S. Ct. at 1361 (citations omitted). In her opposition brief, Plaintiff does not expressly seek to hold the District liable under a "single-incident liability" theory, and her complaint does not sufficiently allege it. She does not, for instance, allege that the District completely failed to train its officers on the constitutional limits on the use of deadly force. *See id.*

that District officials, as demonstrated by their inaction, failed to address and correct. Plaintiff alleges that: "Cleman Sweptson Jr. was shot and killed in an area of Washington D.C. where there is an increasing number of complaints from residents against M.P.D. claiming racial profiling, harassment and continuous violations of the constitutional rights of African Americans." Am. Compl. ¶ 11.

Courts in this jurisdiction have recognized that municipal liability can be predicated on the District's failure to address repeated complaints of harassment and unconstitutional police behavior. For instance, in *Singh*, the court found that the plaintiff adequately pled municipal liability by stating that he had registered complaints of harassment on three separate occasions to MPD officials about a particular group of MPD officers and had complained about the harassment campaign at two municipal hearings. 881 F. Supp. 2d at 87-88 (citations omitted). The court held that, "after the plaintiff expressly reported the harassment on five separate occasions, the District would have been aware of the risk of constitutional violations[;] [y]et nothing was done to stop, discipline, or investigate the defendant officers." *Id.* at 87 (citations omitted). Similarly, the plaintiff in *Muhammad v. District of Columbia*, 584 F. Supp. 2d 134 (D.D.C. 2008), successfully pled municipal liability where he claimed to have evidence that the police officer whose conduct was at issue had been the subject of at least 14 citizens' complaints. *Id.* at 139. The court held that, "[i]f the plaintiff is successful, the District could be subject to liability under Section 1983 for failing to respond to a known risk of constitutional violations." *Id.*

Unlike *Singh* and *Muhammad*, Plaintiff's complaint in this case lacks the kind of "factual content" to support her allegation of an "increasing number of complaints . . . claiming racial profiling, harassment and continuous violations of the constitutional rights of African Americans." Am. Compl. ¶ 11. The complaint does not, for instance, state the number, nature, and timing of

the complaints of police misconduct; the identity of the officers who were the subject of the complaints; or even whether complaints were made against Officer John Doe. Absent such facts, Plaintiff's generalized assertion of ignored and unanswered complaints of harassment and police misconduct amount to little more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" that does not pass muster under *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Because Plaintiff's complaint fails to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the court must grant the District's motion to dismiss Count II. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## V. CONCLUSION

For the reasons stated above, the court grants the District's motion to dismiss Count II without prejudice. A separate order accompanies this memorandum.

Dated: February 24, 2015

Amit P. Mehta
United States District Judge